## MASSILLON ENGINE & THRESHER CO. v. BARROW et al. (No. 210–3305.)

(Commission of Appeals of Texas, Section A. June 1, 1921.)

**1. Homestead ⬤⟿89—Both widow and remainderman cannot have homestead in same land.**

A son, living with his widowed mother upon land which she claimed as her homestead, was precluded from asserting a homestead interest in the same land which she claimed as a homestead, for one claiming merely an interest in remainder is without any right to possession necessary to found a claim of homestead.

**2. Homestead ⬤⟿84—Tenants in common held to have impressed tract with homestead character.**

Where surviving widow and children, upon death of the husband and father, became tenants in common of a tract of community land of the mother and deceased, and one son lived upon the tract, and had inclosed and was using not more than 20 acres of it, and another son was living upon contiguous land which he had purchased and built a house on, and his inclosure extended onto the tract and within its compass, and upon such tract were the barn, some fruit trees, and a plot of ground not exceeding 10 acres which he was farming, the sons subjected the land to homestead purposes.

**3. Homestead ⬤⟿84—Tenants in common may impress land with homestead.**

Tenants in common may impress the tract owned in common with the character of a homestead, provided such use does not prejudice the rights of other cotenants.

**4. Homestead ⬤⟿37—Homestead interest of tenants in common not confined to land actually inclosed by them.**

The homestead interest of tenants in common is not confined to the land actually inclosed by them, but is coextensive with their undivided interest in the entire tract, and, so long as it is unpartitioned, it is not within their power to designate their homestead by metes and bounds.

**5. Homestead ⬤⟿37—Inclosure of part of tract by tenants in common does not limit their homestead to inclosed part where remainder is wild land.**

The law does not absolutely protect the entire tract of land, up to the amount of 200 acres, upon which the homestead may be located, regardless of the use to which a part of it may be devoted, but merely limits or restricts the homestead to that acreage, and the owner may, by a use inconsistent with the homestead purpose, abandon a part of that which the law would otherwise protect; but, where the uninclosed land of a tract held by tenants in common was wild, uncultivated land not used for any purpose, such use was not inconsistent with homestead purposes, so that, as to tenants in common who had inclosed part of the tract, and were living thereon as their homestead, their homestead right extended to their undivided interest in the whole tract, for, in such case, until there is an inconsistent use, the law implies an intent to use, and therefore a constructive use, of the entire tract for homestead purposes.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit by Clarence Barrow and others against the Massillon Engine & Thresher Company. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (203 S. W. 933), and defendant brings error. Modified and affirmed.

H. E. Marshall, of Houston, and A. W. Marshall, of Anahuac, for plaintiff in error.

Stevens & Stevens, of Houston, for defendants in error.

SPENCER, J. Clarence Barrow and wife, Rosa, Lee Barrow and wife, Josephine, and J. M. Barrow and wife, Jane, instituted this suit in the district court of Chambers county, Tex., naming the Massillon Engine & Thresher Company, a corporation, and F. R. Lafour, sheriff of Chambers county, Tex., as defendants, seeking to restrain the sale of the lands described in the petition—the corporation having procured the issuance of an order of sale upon a judgment which the corporation had secured in the district court of Chambers county, Tex., against Clarence, Lee and J. M. Barrow, and this order of sale having been placed in the hands of the sheriff. Lee and J. M. Barrow having died during the pendency of the suit, the proper heirs were made parties thereto.

The basis of the judgment against the three Barrows was this: On October 7, A. D. 1903, in order to better secure the corporation in the payment of an indebtedness which the Barrow brothers owed it, the three brothers, joined by their wives, executed and delivered a mortgage upon their undivided interest in the two tracts of land which are the subject of this controversy—one consisting of 540 acres; the other of 160 acres. Upon the indebtedness becoming due, and upon default in the payment thereof, that suit was instituted, but the wives were not made parties thereto. Judgment for the amount of the indebtedness, with foreclosure of the mortgage lien, was rendered; the judgment directing an order of sale upon the lands upon which such lien was foreclosed.

The present suit for injunction is predicat-

ed upon the alleged ground that the land in question constituted, at the time of the execution of the mortgage, the homestead of the plaintiffs, and that the mortgage was not executed for the purpose of paying or securing the payment of any lien for purchase money, taxes, or improvement upon such homestead.

The court issued a temporary restraining order, and, upon final hearing, perpetually enjoined the foreclosure, by order of sale, of the judgment lien against the land claimed as homesteads by the plaintiffs, and in this final order decreed that, in so far as the judgment in the foreclosure suit purported to fix a lien against the land described in the judgment, it be canceled and held for naught. Upon appeal, the Court of Civil Appeals affirmed the judgment. 203 S. W. 933.

J. S. Barrow died in 1892, leaving surviving him seven children—Clarence, Lee, and J. M. being of this number—and his wife, Eliza Jane Barrow, the mother of these children. It is admitted that the 540-acre tract, known as the Banda tract, was the separate property of J. S. Barrow, and the 160-acre tract, known as the Barrow tract, the community property of the marriage.

[1] Clarence and Lee Barrow and the heirs of J. M. Barrow, deceased, each claimed a homestead right to an undivided interest of 200 acres of the entire tract of land, although each was entitled to but an undivided interest of approximately 67 acres. The land was divided subsequent to the giving of the mortgage. Clarence Barrow lived in the house with his mother upon the 540-acre tract of land. His claim to a homestead interest is based upon his own evidence, as follows:

"I married at home, but do not remember how long I had been married at the time I signed this mortgage. I was living on the old place. We took an undivided interest in the land, and it had never been divided. I never had built a home or house on any part of the 700 acres before this mortgage was given, but I lived on the homestead. My mother was living in the old Barrow homestead, and had been living there since the death of my father. I was living there with my mother. She remained there and occupied it up until the time of her death. She used that as her homestead. I did not rent land from my mother, just worked with her. I think the Banley (Banda) is all prairie, and the Barrow is all prairie except a little bit in the woods. Nobody occupied that, outside of the little field John had, and what Lee had, and what my mother had, there in the old home place, all that land was out. We had about 40 acres under fence, and the rest of it was wild range land, and there was no attempt to utilize it. Outside of what we were farming and our pasture, the rest of it was outside."

He also testified that, before and after the execution of the mortgage, he and his brothers got their firewood and posts from the 16 acres of timbered land on the bayou. This tract was on the Banda survey, and was subsequently set aside in partition to Clarence Barrow. It is quite clear from the undisputed evidence that the alleged claim of Clarence Barrow to a homestead right is coextensive with and confined to the identical land used by his mother as her independent homestead. No act of his indicated an intention to devote any of the land, outside of that held and used by the mother, to homestead purposes. No contention is made that she abandoned her homestead, or waived her right thereto; but, on the other hand, it is admitted that she continued to exercise the right of homestead possessions given her under the Constitution until her death. This right was, we think, exclusive, and precluded Clarence Barrow and the other heirs absolutely from asserting a homestead interest in the same land which she claimed as a homestead, while her right of possession continued and was exercised. This identical question was before the Supreme Court of Kentucky in the case of Merrifield v. Merrifield, 82 Ky. 526. That court said:

"But both she [the widow] and D. B. Merrifield [the son] cannot have a homestead in the land. It was decided in the case of Meguire, Helm & Co. v. Burr, 4 Ky. Law Rep. 659, that joint owners of a tract of land, upon which they both live in separate buildings with their families, are each entitled to a homestead, although the land has not been divided. But this court has never gone so far as to determine that both the widow and remainderman can, at the same time, have a homestead in the same land, nor do we think the statute can be so applied and extended. The theory of the homestead exemption is that the debtor requires a prescribed amount in value of land to be set apart for the support of himself and dependent family, but to accomplish such a beneficent object he must have the right to occupy and use it; * * * but a party having merely an interest in remainder is without any right to the possession, and, in the meaning of the law, not in possession."

Defendant in error relies upon the decision of the majority in Ward v. Walker (Tex. Civ. App.) 159 S. W. 320, in which writ of error was denied, as decisive of the question that the child of a survivor owning an undivided interest in land devoted to homestead purposes by the survivor may, by living with the latter, acquire a homestead interest in the same land designated and used by the survivor as a homestead. In our opinion the decision of the majority upon that question was erroneous.

In that case the plaintiffs were seeking to enforce the specific performance of a contract concerning land. C. K. Walker and wife, defendants against whom specific performance was sought, interposed the defense that the land was their homestead, and that, as the wife did not join in the contract, the

contract was void as to them. They occupied and claimed the same land as a homestead as did the father. The trial court refused to decree specific performance against them or the other tenants in common, named as defendants in the action. From this judgment the plaintiff appealed. The Court of Civil Appeals affirmed the judgment as to C. K. Walker and wife, upon the ground that the land was their homestead, but reversed and remanded, with instructions to the trial court to enter judgment against W. C. Walker, C. W. Walker, and L. M. Walker, decreeing specific performance by them as to their undivided interest in the land described in the contract. The latter applied for writ of error, but C. K. Walker and wife, being satisfied with the judgment, did not join in the application for the writ, and neither did the plaintiffs apply for a writ of error to correct the judgment of the Court of Civil Appeals as to C. K. Walker and wife.

We have examined the application for writ of error in that case, and find that there is no assignment in the application directly or indirectly calling in question the correctness of the majority's opinion upon the homestead question. Therefore, the refusal of the application for the writ cannot be considered an approval of the majority's holding upon that question.

[2] The 160-acre Barrow tract was the community property of Eliza Jane Barrow and J. S. Barrow, and, upon the death of J. S. Barrow, the children and the mother became tenants in common. At the date of the giving of the mortgage, Lee Barrow lived upon this tract, and had inclosed and was using not more than 20 acres of it. J. M. Barrow purchased from one Wallis less than an acre of land—out of a tract of land not the subject of this litigation, but contiguous to the land in controversy—upon which he had erected a house, and was living at the date of the transaction. The evidence reveals that the inclosure extended onto the Barrow tract, and that, within its compass, but upon the Barrow tract, were the barn, some fruit trees, and a plot of ground not exceeding 10 acres, which he was farming.

[3, 4] Under these facts, it cannot be doubted, we think, that it was the intention of Lee and J. M. Barrow to subject, and that they did subject, the land so used to homestead purposes. It is well settled that, as tenants in common, they had a right to impress the land with the homestead character, provided such use did not prejudice the rights of the other cotenants. Clements v. Lacy, 51 Tex. 150. Their homestead interest was not confined to the land actually inclosed, but was coextensive with their undivided interest in the entire tract; and, so long as it was unpartitioned, it was not within their power to designate their homestead by metes and bounds. Jenkins v. Volz, 54 Tex. 636; Brown et al. v. McLennan et al., 60 Tex. 43.

[5] The homestead rights of Lee and J. M. Barrow to the extent of their undivided interest in the entire tract is not to be defeated, and their homestead right confined to the amount of land actually inclosed and used by them, merely because the entire tract was not used. The law does not absolutely protect the entire tract of land up to the amount of 200 acres, upon which the homestead may be located, regardless of the use to which a part of it may be devoted. It merely limits or restricts the homestead to that acreage, and the owner may, by a use inconsistent with the homestead purpose, abandon a part of that which the law would otherwise protect.

The uninclosed land of the Barrow tract was not put to a use inconsistent with homestead purposes. In fact, it was wild, uncultivated land, not used for any purpose. In a case of this character, until there is such inconsistent use, the law implies an intent to use, and therefore a constructive use of, the entire tract for homestead purposes, and prohibits the creation of liens thereon except for the purposes stated in the Constitution. McDougall et al. v. McGinniss et al., 21 Fla. 362; Morrissey v. Donohue, 32 Kan. 649, 5 Pac. 27.

It is our conclusion that the mortgage lien attempted to be created upon the undivided interest of Lee and J. M. Barrow in the Barrow tract is invalid; but that otherwise it is a valid and enforceable lien.

We recommend, therefore, that the judgment of the district court be modified, so as to permit the carrying out of the order of sale, under the terms of the judgment in the original suit, of the undivided interest of Clarence Barrow in the Barrow survey, and of Clarence Barrow and the other defendants in error of their undivided interest in the 540-acre tract of land; and, as so modified, that the judgment be affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.