**GORDON–SEWALL & CO., Inc., v. WALKER et al. (No. 1017.)\***

(Court of Civil Appeals of Texas. Beaumont. Jan. 31, and Feb. 2, 1924. Rehearing Denied Feb. 15, 1924.)

**1. Mortgages ⬅⟹175—Priority created by filing and recording of abstract of judgment.**

The due filing and recording of an abstract of judgment created a lien in judgment creditor's favor upon all the real estate owned by defendant in the county not exempt to him by law (Rev. St. art. 5616), which was superior to all unrecorded deeds of trust of which creditor had no notice.

**2. Mortgages ⬅⟹171(5)—Recitation in deed of trust held to give constructive notice of unrecorded deed of trust.**

A recitation in a recorded deed of trust, "It is understood that this conveyance is subject to a deed of trust given by us to S. in 1919," was sufficient to give constructive notice of the deed of trust held by S., though unrecorded.

**3. Records ⬅⟹19—Effect of recording of instrument as to constructive notice.**

The due recording of an instrument authorized by law to be recorded gives constructive notice to all parties claiming adversely thereto of all the conditions, recitations, terms, and stipulations contained therein necessary to give it the effect intended by the parties thereto as gathered from the terms of the instrument itself.

**4. Judgment ⬅⟹770—Issue of execution within one year after date fixed lien for ten years.**

The issuance of an execution upon a judgment within one year from its date after the judgment had been abstracted fixed the lien thereof for ten years, under Rev. St. art. 5617.

**5. Judgment ⬅⟹800(1)—Judgment creditor does not lose lien by failing to have credit entered upon record.**

Judgment creditor did not lose its lien by failing to make due notation on the record of its abstracted judgment of the amount received by it from a sale of collateral under execution; Rev. St. arts. 5618, 5619, being intended for the benefit of the judgment debtor.

**6. Judgment ⬅⟹768(1)—Abstract not void for failure to describe collateral held.**

Failure of abstract of judgment to describe collateral held by judgment creditor and lien foreclosed in its judgment would not make void the abstract and prevent it from creating a lien upon the property of the judgment debtor.

**7. Homestead ⬅⟹37,84—Occupation of land held to impress entire tract with homestead character.**

Use, enjoyment, and occupation by joint owners of a number of parcels of land included in one entire tract within one fence, impressed each and every acre thereof with the character of homestead; that is, the joint owners had the right to carve from such land, considered as a whole and as one tract, their constitutional homesteads of 200 acres, having due regard, of course, to the equities and rights of those claiming adverse liens thereon and having due regard to the location of the houses in which they lived and the improvements used by them in connection with their occupation and use of the houses.

**8. Homestead ⬅⟹115(1)—Trust deeds vested all title out of joint owner.**

As one of two joint owners was a single man when he executed deeds of trust covering parts of the land held as homestead, such instruments were valid and binding against him

⬅⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

\*Writ of error dismissed for want of jurisdiction April 9, 1924.

and effective to vest out of him the title to all lands described therein.

**9. Homestead ⬳131—No homestead interest claimed in portion of land mortgaged.**

One of several joint owners of land having executed a valid deed of trust on certain parts of the lands which might be designated by him as a home, he cannot now claim a homestead interest therein.

**10. Homestead ⬳154—Interest not lost by marriage.**

Homestead interest fixed upon lands by occupancy and use while living with mother was not lost by reason of subsequent marriage.

**11. Acknowledgment ⬳20(3)—Attorney's relation to bank did not disqualify him to take acknowledgment.**

Attorney's relation to bank did not disqualify him to take acknowledgment of grantors in deed of trust to bank, it appearing that the attorney's services for the bank were paid for as rendered and that he had no pecuniary or contingent interest at the time of the execution of the deed of trust, which he had drawn up.

Appeal from District Court, Montgomery County; J. L. Manry, Judge.

Suit by Gordon-Sewall & Co., Incorporated, against G. D. Walker and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Boyles, Brown & Scott, of Houston, and W. N. Foster, of Conroe, for appellant.

C. D. Krause, of La Grange, and A. L. Kayser and McCall & Crawford, all of Conroe, for appellees.

WALKER, J. On the 9th day of October, 1922, when appellants instituted this suit, appellees G. D. and C. E. Walker were the owners, and had been the owners during all the time involved in the various transactions reflected by this opinion, of 12 tracts of land in Montgomery county. These different tracts, described by appellant under separate field notes were contiguous to each other, constituted one farm of about 1,000 acres under one fence, with no cross fences except a pasture fence and some small inside fences surrounding the homes of the Walkers. They owned this land jointly, and cultivated, used and enjoyed it jointly, having in cultivation about 900 acres. During all the time involved in these various transactions, C. E. Walker was a married man, and G. D. Walker was a single man until September 18, 1921, when he married, which relation continued until this case was tried, but during all the time, from the inception of these transactions, he lived with his mother on this land, and that relation was sufficient to give him the benefit of the homestead exemption laws. After his marriage, his mother continued living with him and his wife, and was so living with him at the trial of this case.

During all this time, G. D. and C. E. Walker made their home on what is known in the record as the Statts tract, containing 300 acres of land, less 2 acres sold off for cemetery purposes. On this tract each of the Walkers maintained a separate home, about 400 yards from each other, with all the usual improvements incident to a home. Also, on this tract they had a storehouse, gin, and other improvements. From the evidence, we gather that this tract was farmed mostly by the Walkers with hired labor, while the balance of their lands appears to have been cultivated by tenants, some on halves and others on thirds and fourths; but all the land, whether cultivated by tenants or by hired hands, was under the general supervision of the Walkers, and when the tenants were not employed on their respective allotments, they were used on other parts of the farm. There was no dividing fence between the Statts tract and the other tracts, nor, as we said, was there any fence segregating any of the tracts from the others. It does not appear from any statement made by any of the parties to this appeal how the title to this land was vested in the Walkers, other than the testimony of G. D. Walker, to the effect that it was deeded to them by their mother.

From this statement of the evidence, as we understand it, we find that these various tracts as described by appellant were, in fact, used, cultivated, and enjoyed by the Walkers as one tract of land, without any relation at all in its use to the several divisions as shown by the field notes given by appellant. We further find that the Walkers used this farm jointly in supporting their families, and that the proceeds of the farm, both that from the lands cultivated by hired hands, as well as by their tenants, were used directly on the farm in such support. These facts prevailed during all the time involved in the transactions reflected by this opinion.

On the 13th day of January, 1919, C. E. Walker and his wife, Mary Sue Walker, and G. D. Walker, executed a deed of trust to appellee John Schumacher State Bank of La Grange on certain of the tracts of land as described in appellant's petition to secure it in a note of $8,000 of even date with the deed of trust. The deed of trust was duly executed and delivered, but not filed for record until the 19th day of September, 1921. On the 12th day of March, 1921, G. D. and C. E. Walker executed a deed of trust to appellee, the First State Bank of Conroe, on certain tracts of their land, as described by appellant, to secure it in two notes; one for $4,000, and the other for $3,075. This deed of trust contained the following recitation:

"It is understood that this conveyance is subject to a deed of trust given by us to the John Schumacher State Bank of La Grange, Tex., in 1919,"

and was duly filed for record. It was acknowledged by G. D. and C. E. Walker before A. L. Kayser, a notary public. The following statement from the brief of the John Schumacher State Bank reflects Kayser's relation to the Conroe State Bank:

"Mr. A. L. Kayser, the notary public who took and certified the acknowledgments of the makers to the deeds of trust in favor of the First State Bank of Conroe, prepared these papers as attorney for said bank. He had nothing to do with the creation of the indebtedness thereby secured, and had no interest therein. He was neither an officer, director nor stockholder in said bank. He was not an employee of said bank; did not receive a salary; was paid only for such services as he rendered to the bank. His fee for preparing these deeds of trust did not depend upon the execution thereof, and his pay therefor was forthcoming regardless of whether or not the papers were ever executed. He had no interest in the execution of the papers. He positively testified: 'That at the time of the execution of the deed of trust of March 12, 1921, and the notes which are secured, I had absolutely no monetary interest whatever in the transaction. * * * I had no monetary interest at stake either by way of interest in the bank or by way of contingent fee upon the execution or not of the papers in question.'"

Certain payments were made by the Walkers on the note held by the Conroe State Bank, which were reflected by the indorsements thereon. Afterwards, to wit, on the 31st day of October, 1921, the Walkers renewed the notes, one in the sum of $3,474.22, and the other in the sum of $3,482.20, and also renewed the deed of trust, which was filed for record on the 3d day of November, 1921. This deed of trust to the First State Bank of Conroe, as shown by the recitations therein, as given above, covered the lands on which the John Schumacher State Bank had a lien, together with other tracts described by appellant in its petition.

On the 4th day of May, 1921, appellant recovered a judgment in one of the district courts of Harris county, Tex., against appellee G. D. Walker in the sum of $10,315.50, with 8 per cent. interest thereon from the date thereof. This judgment also foreclosed appellant's lien on certain collateral held by it as security for its indebtedness against G. D. Walker, and ordered the sale thereof. An abstract was made of this judgment, containing all the statutory essentials, on the 4th day of May, 1921, and was filed for record on the 7th day of May, 1921, in Montomery county, the home of the Walker boys, and where all their land was situated, and was, on the same day, duly recorded and indexed in full compliance with the statute. This abstract made no reference to the lien foreclosed on the collateral, nor did it describe the collateral in any way. At the time of the issuance of the abstract and of its record, no payment had been made on the judgment; nor was it entitled to any credits. On the 2d day of June, 1921, an order of sale was issued on appellant's judgment against G. D. Walker, the collateral described therein duly seized thereunder, and duly sold on the 15th day of June, 1921, for a sufficient sum to entitle G. D. Walker to a net credit of $1,871.02. On the 20th day of June, 1921, Gordon-Sewall & Co. executed the following receipt:

"The State of Texas, County of Harris.

"Whereas, in cause No. 94,233, on the docket of the district court of Harris county, Texas, 55th judicial district, Gordon-Sewall & Co., a corporation, as plaintiff, recovered judgment against G. D. Walker, as defendant, on May 4, 1921, for $10,315.15, with interest thereon from said date at the rate of 8 per cent. per annum and $6.40 court costs:

"Now, this is to acknowledge that since the rendition of said judgment and abstracting of same as a lien, said $5.55 court costs have been paid, and the further sum of $1,871.02 has been paid in part payment on said judgment and same is entitled to credit therefor, of date June 15, 1921, date of sheriff's sale in Harris county, although sheriff did not execute bill of sale and pay over money till June 20, 1921.

"Gordon-Sewall & Co.,
"By Cleveland Sewall, President."

This receipt was duly acknowledged on the 20th day of June, 1921, and duly recorded by the county clerk of Montgomery county in Book 102, p. 229, of the deed records of his office. The clerk noted on the abstract of the judgment the amount of credit on the judgment, without giving the date of the credit, but referred to its record in the deed records of the county.

On the foregoing facts, appellant instituted this suit against G. D. Walker and C. E. Walker to foreclose its judgment lien against G. D. Walker's interest in the lands owned by him jointly with C. E. Walker, describing in his petition the 12 tracts of land mentioned by us above. The 12 tracts of land as thus described, as far as this record shows, was all the land owned by G. D. Walker and C. E. Walker at that time. Appellant made parties defendant the First State Bank of Conroe, the John Schumacher State Bank of La Grange, and other parties shown by the record to have no interest in the property, and who, without exception, went out of the case. The parties as named are the only ones involved in this appeal.

The Walkers duly pleaded their homestead exemptions, praying that the same be designated on the ground and partitioned and set off to them. The banks pleaded their liens as reflected by the foregoing statement. Appellant contended that its lien was superior to that of both of the banks, because the John Schumacher State Bank had not placed its deed of trust of record at the time the judgment was abstracted. We further find that appellant had no actual notice of the lien of either of the banks.

On a trial to the court without a jury, judgment was entered disposing of the rights of the parties as follows:

"(a) The lien of the John Schumacher State Bank of La Grange is a prior lien to all other liens on tracts Nos. 1, 2, 4, 5, 7 and 11.

"(b) The lien of the First State Bank of Conroe is second and subordinate to that of the John Schumacher State Bank of La Grange as to tracts Nos. 1, 2, 4, 5, 7 and 11, and is superior and prior to the lien of Gordon-Sewall & Co., Inc., as to tracts Nos. 1, 2, 4, 5, 7, 10, 11 and 12. That the First State Bank of Conroe has a first lien on tracts Nos. 10 and 12.

"(c) That the lien of Gordon-Sewall & Co., Inc., is subordinate and inferior to the lien of both the John Schumacher State Bank of La Grange and the First State Bank of Conroe as to tracts Nos. 1, 2, 4, 5, 7 and 11, and to the First State Bank of Conroe on tracts Nos. 3 and 8."

The court further recited in its judgment:

"The order in which said property shall be sold and the application of the proceeds thereof shall be as follows: First, he shall sell the collateral notes above described and apply the proceeds of said sale, first to payment of court costs, and the cost of issuing and executing this writ; and, second, towards the satisfaction of the judgment awarded herein to the John Schumacher State Bank of La Grange.

"He shall next sell the tracts of land described as tracts Nos. 1, 2, 4, 5, 7 and 11, excepting from such sale, however, that portion of the homestead exemption set aside to C. E. Walker as described by metes and bounds in paragraph 22 of this judgment, and he shall apply the proceeds of such sale as follows, to wit: One-half of the proceeds arising from such sale representing the interest of C. E. Walker, in said property shall be applied as follows: First, to the satisfaction of any balance remaining unpaid on the judgment awarded the John Schumacher State Bank of La Grange herein; second, towards the satisfaction of the judgment awarded to the First State Bank of Conroe herein; and, third, any remaining balance shall be paid over to the said C. E. Walker. The other one-half of the proceeds thereof, representing the interest of G. D. Walker in said property shall be applied as follows: First, to the satisfaction of any balance remaining unpaid on the judgment awarded herein to John Schumacher State Bank of La Grange; second, to satisfaction of any balance remaining unpaid on the judgment awarded the First State Bank of Conroe; third, to the satisfaction of the judgment awarded to Gordon-Sewall & Co., Inc.; and, fourth, any balance remaining shall be paid over to the said G. D. Walker.

"If there be any balance on the judgments in favor of the First State Bank of Conroe and Gordon-Sewall & Co., Inc., or either of them, unpaid, then he shall forthwith sell the following described tracts of land, to wit, number 12, as above described, and he shall apply the proceeds of such sale as follows: One-half of the proceeds thereof representing the interest of C. E. Walker in said property shall be applied as follows: First, towards any remaining balance unpaid on the judgment in favor of the First State Bank of Conroe; second, any remaining balance shall be paid over to said C. E. Walker; and as to the other one-half of the proceeds thereof, representing the interest of the said G. D. Walker, he shall apply the proceeds as follows: First, to the satisfaction of any balance unpaid on the judgment in favor of the First State Bank of Conroe; second, to the satisfaction of any balance remaining unpaid on the judgment in favor of Gordon-Sewall & Co., Inc.; and, third, any remaining balance shall be paid over to the said G. D. Walker.

"If there be any balance remaining on the judgment in favor of either the First State Bank of Conroe or Gordon-Sewall & Co., Inc., he shall forthwith sell the interest of C. E. Walker in and to said tract of land No. 10, except the homestead exemption of said G. D. Walker therein as described in paragraph 22 of this judgment, and shall apply the proceeds of said sale as follows: First, to the payments of any balance remaining unpaid on the judgment in favor of the First State Bank of Conroe; and, second, any balance remaining unpaid shall be paid over to the said C. E. Walker.

"If there be any portion of the judgment in favor of the First State Bank of Conroe remaining unpaid, he shall forthwith sell the interest of the said G. D. Walker, in and to said tract No. 10, excepting therefrom his homestead interest as described in paragraph 21, of this judgment, and shall apply the proceeds thereof as follows: First, to the satisfaction of any balance remaining unpaid on the judgment in favor of the First State Bank of Conroe; second, to any balance remaining unpaid on the judgment in favor of Gordon-Sewall & Co., Inc.; and the remaining balance, if any, shall be paid over to the said G. D. Walker.

"If there be remaining balance unpaid on the judgment of the First State Bank of Conroe, he shall forthwith sell the tract of land described in paragraph 21 of this judgment (being the tract set aside to said G. D. Walker which is not exempt as against sale in favor of the First State Bank of Conroe), and he shall apply the proceeds thereof as follows: First, to the satisfaction of any remaining balance unpaid on the judgment in favor of the First State Bank of Conroe; and, second, any remaining balance shall be paid over to the said G. D. Walker.

"If there be any remaining balance on the judgment in favor of Gordon-Sewall & Co., Inc., he shall forthwith sell tracts Nos. 3 and 8, and shall apply the proceeds thereof: First, to the satisfaction of any balance remaining unpaid on the judgment in favor of Gordon-Sewall & Co., Inc.; and, second, any surplus he shall pay over to G. D. Walker."

The judgment also gave G. D. Walker 200 acres on the Statts tract as a home, and C. E. Walker the balance of the Statts tract, with a sufficient acreage from adjoining lands covered by the deed of trust of the John Schumacher State Bank to make up his 200 acres.

The land awarded by the court to the two banks was covered, respectively, by their deeds of trust. The tracts awarded to appellant on which it was given a superior lien were not covered by the deeds of trust.

Appellant has prosecuted its appeal as

against the judgment, while the two banks and the Walkers have filed cross-assignments, complaining of certain features of the judgment.

Without a further statement of the propositions advanced by the respective parties, we believe the following conclusions dispose of all propositions urged.

[1] 1. The due filing and recording of appellant's abstract of judgment created a lien in its favor upon all the real estate owned by G. D. Walker in Montgomery county not exempt to him by law (article 5616, Revised Civil Statutes), which was superior to all unrecorded deeds of trust of which it had no notice. Hirt v. Werneburg (Tex. Civ. App.) 191 S. W. 711; Cetti v. Wilson (Tex. Civ. App.) 168 S. W. 996.

[2, 3] 2. The following recitation:

"It is understood that this conveyance is subject to a deed of trust given by us to the John Schumacher State Bank of La Grange, Tex., in 1919,"

contained in the deed of trust held by the First State Bank of Conroe, which was duly recorded before appellant abstracted its judgment, was sufficient to give it constructive notice of the unrecorded deed of trust held by the John Schumacher State Bank. The due recording of an instrument authorized by law to be recorded gives constructive notice to all parties claiming adversely thereto of all the conditions, recitations, terms, and stipulations contained therein necessary to give it the effect intended by the parties thereto as gathered from the terms of the instrument itself. White v. McGregor, 92 Tex. 556, 50 S. W. 564, 71 Am. St. Rep. 875. By the terms of its deed of trust, the claim of the First State Bank of Conroe was, by contract, made subject to the claim of the John Schumacher State Bank. Its lien could take effect only after the John Schumacher State Bank had been satisfied. Such was the contract itself. So, notice by construction to appellant of the deed of trust of the First State Bank of Conroe necessarily carried with it notice of the claim of the John Schumacher State Bank. The First State Bank of Conroe, under its contract, could be protected only by visiting appellant with that notice. That appellant has recognized the difficulty in construing the deed of trust of the First State Bank of Conroe is clearly manifest from its following propositions:

"(19) To apply the proceeds of the sale of the collateral and tracts Nos. 3, 8, 10 and 12 as stated in proposition No. 18, then the proceeds of the sale of tracts Nos. 1, 2, 4, 5, 7 and 11 should be divided into two equal portions, representing the interest of C. E. Walker and G. D. Walker, respectively, and the portion representing the interest of the said G. D. Walker should be applied, first, to the payment of any balance remaining due on the debt of Gordon-Sewall & Co., Inc., under this judgment, and if more than sufficient to pay said debt to said Gordon-Sewall & Co., Inc., then the balance of such proceeds representing the portion of said G. D. Walker should be placed with an equal amount of the proceeds representing the interest of C. E. Walker, and the joint fund thus created to be applied, first, to the payment of the balance due the John Schumacher State Bank, and, second, to the payment of the balance due the First State Bank of Conroe under this judgment, and any balance remaining of said joint fund after the payment of the debts due said banks shall be paid one-half to the said C. E. Walker, and one-half to the said G. D. Walker, but if said joint fund so created be insufficient to pay the debts due said banks, then all the balance representing the interest of the said C. E. Walker shall be applied, first, to the payment of any balance due the John Schumacher State Bank of La Grange, and, second, to any balance due the First State Bank of Conroe, and then any balance of such proceeds remaining shall be paid to the said C. E. Walker; and in support of this alternative contention, we submit the following subpropositions:

"(19-a) The act of the John Schumacher State Bank in withholding its deed of trust from the record has had the legal effect of rendering the same void as against the rights of Gordon-Sewall & Co., Inc., so that the indebtedness due the John Schumacher State Bank of La Grange cannot be paid out of the proceeds of the sale of said property until the lien of Gordon-Sewall & Co., Inc., is discharged and satisfied.

"(19-b) The contract between the John Schumacher State Bank of La Grange and the First State Bank of Conroe, and the result of the knowledge and notice of the First State Bank of Conroe that the John Schumacher State Bank of La Grange was possessed of a lien upon said property which should be discharged out of the proceeds arising from the sale of the property before the indebtedness due the First State Bank of Conroe should be paid, must control and have the effect of preventing any portion of the proceeds arising from the sale of said property being paid to the First State Bank of Conroe until after the John Schumacher State Bank of La Grange can receive its debt, and since the John Schumacher State Bank cannot receive its debt until Gordon-Sewall & Co., Inc., has been paid, then no part of the proceeds arising from the sale of said property can be paid to the first State Bank of Conroe until after said Gordon-Sewall & Co., Inc., has been paid and the right accrues and has come about to the John Schumacher State Bank to receive payment of its debt.

"(19-c) A mortgage which recites that it is subject to another or prior mortgage is, by the notice evidenced by such recital, made subordinate to such prior mortgage.

"(19-d) Where a mortgage recites that it is subject to another mortgage, the satisfaction of the lien of such mortgage out of the property covered by such other mortgage will be postponed until the lien of such other mortgage is satisfied.

"(19-e) Where a mortgage is not recorded, and for that reason is subordinate to the lien

of a judgment creditor, the satisfaction of the lien of such mortgage out of the property covered by the creditor's lien will be postponed until the lien of such creditor is satisfied.

"(19-f) Where a recorded mortgage recites that it is subject to another mortgage which other mortgage is unrecorded, and the lien of the recorded mortgage ·is by reason of the knowledge evidenced by such recital subordinated to the lien of such other unrecorded mortgage, and the satisfaction of a lien of such recorded mortgage out of the property covered by both mortgages, must be therefore postponed until the lien of such other unrecorded mortgage is satisfied; and where the lien of such other unrecorded mortgage is subordinate to the lien of a judgment creditor, and it cannot be satisfied out of the property covered by such unrecorded mortgage and by the creditor's lien, until the lien of the judgment creditor is satisfied, the lien of such recorded mortgage is also subordinate to such judgment creditor's lien, and the satisfaction of such lien of such recorded mortgage must be postponed until the lien of such creditor is satisfied."

It is clear from these propositions that appellant recognizes that the contract between the two banks must be enforced, and that the John Schumacher State Bank must be given preference over the Conroe State Bank. To follow appellant's proposition would, by giving it a preference over the Conroe State Bank, be to ignore the clear provisions of the statute and destroy the lien of the First State Bank of Conroe after it had, by due diligence, recorded its mortgage.

[4] 3. The issuance of the execution upon appellant's judgment against G. D. Walker within one year from its date, after the judgment had been abstracted, fixed the lien for ten years. Article 5617, Revised Civil Statutes. After a judgment has been duly abstracted, the statute requires only one thing to give it validity for ten years, namely, the issuance of an execution within 12 months after the rendition of the judgment. Under article 5617, it is our conclusion that appellant's abstract of judgment lien was in effect and covered all lands owned by G. D. Walker subject thereto.

[5] 4. Appellees contend that appellant lost its lien by failing to make due notation on the record of its abstracted judgment of the amount received by it from the sale of its collateral. As shown by our statement, the clerk noted the net amount of the proceeds of the sale, without giving the date of the sale, and referred to the record of the receipt in the deed records of his county. Articles 5618 and 5619, Revised Civil Statutes, provide:

"Art. 5618. Satisfaction of any judgment in whole or in part may be shown:

"(1) By return upon an execution issued upon said judgment, or by a certified copy of such return, certified by the officer to whom the return is made, such certificate showing the names of the parties to the judgment, the number and style of the suit, the date and amount of the judgment, the court in which rendered, and the dates of the issuance and return of the execution.

"(2) By a receipt, acknowledgment or release signed by the party entitled to receive payment of the judgment, or his agent, or attorney of record, and acknowledged or proven for record in the same manner as deeds are required to be.

"Art. 5619. Sufficient space shall be left at the foot of each abstract of a judgment recorded in the judgment record for the entry of credits upon and satisfaction of such judgment, and it shall be the duty of the clerk to enter such credits and satisfaction whenever the same are made to appear, as provided in the preceding article."

These articles are for the benefit of the judgment debtor, and their manifest purpose is to give him a speedy, convenient, and effective procedure ·whereby to release his lands from the lien created by the abstract of the judgment. It seems to us that this must follow because the debtor would certainly be entitled to the custody of the receipt, provided for in article 5618. If in his possession, he would be the only one who could surrender it to the clerk for the purpose of recording it, as provided ·in article 5619. Upon satisfaction of the judgment by execution, the claimant thereunder would not be further interested in having the satisfaction of the judgment noted on the abstract, nor would he lose anything by failing to have such satisfaction noted, while it would be of great interest to the debtor to have such notation made. It is our conclusion that no duty rested upon the appellant to have the credit on its judgment entered on the abstract, and that its failure to have such credit so entered does not destroy its lien. The statute does not so require. And as just said in the third paragraph, supra, the statute expressly provides for the fixing of the lien, and expressly provides that it shal continue for ten years, upon one condition, namely, the issuance of the execution.

[6] 5. The failure of the abstract of appellant's judgment to describe the collateral held by the appellant and the lien foreclosed in its judgment would not make void the abstract and prevent it from creating a lien upon the property of G. D. Walker. The statute contains no such mandatory provision. Blum v. Keyser, 8 Tex. Civ. App. 675, 28 S. W. 561, is very much in point in its facts on this propostion. There, the Supreme Court said:

"The judgment lien is the creature of statute, and the conditions precedent to the validity of such a lien are prescribed, and conditions not so prescribed are not essential to its validity. It is not prescribed ·as a condition that the judgment must be one upon which a writ of execution may issue at any time. It is a requirement that execution issue within the year. The judgment in question being a personal

judgment for a certain sum, and one upon which it was possible to have execution within a year, and execution being in fact sued out within a year, the lien took effect from the registry of the abstract. Hobbs v. Simmonds (Conn.) 23 Atl. 962."

We think this case is also authority on the third and fourth propositions, supra.

[7] 6. The use, enjoyment, and occupation made of the entire tract of land by the Walkers impressed each and every acre thereof with the character of homestead, that is, such use, enjoyment, and occupation of the land gave the Walkers the right to carve from said land, considered as a whole and considered as one tract, their constitutional homesteads of 200 acres each, having due regard, of course, to the equities and rights of those claiming adverse liens thereon, and having due regard to the location of the houses in which they lived and the improvements used by them in connection with their occupation and use of the houses. Railway Co. v. Winter, 44 Tex. 597. G. D. and C. E. Walker each had a homestead claim on this large tract of 200 acres, not a joint claim of 200 acres in the entire tract, but a separate claim of 200 acres each, to be set apart to each of them upon a hearing and under such limitations as would protect adverse claimants. A case directly in point on this proposition is Jenkins v. Volz, 54 Tex. 639, where it is said:

"But we are further of opinion that the homestead right of appellants was not confined to their undivided interest in the two hundred acres, including their improvements, but extended to an undivided interest of 200 acres out of the 520-acre tract, and that until partition had, it was out of their power to designate their homestead by metes and bounds."

This case has been followed by the old Commission in Brown v. McLennan, 60 Tex. 43, and in the present Commission in Thresher Co. v. Barrow (Tex. Com. App.) 231 S. W. 368.

[8] 7. As G. D. Walker was a single man when he executed the deed of trust to the John Schumacher State Bank and the First State Bank of Conroe, those instruments were in all things valid and binding against him and effective to vest out of him the title to all lands described therein. Smith v. Von Hutton, 75 Tex. 625, 13 S. W. 18; Bateman v. Pool, 84 Tex. 405, 19 S. W. 552.

[9] 8. Having executed to John Schumacher State Bank a valid deed of trust on lands which might have been designated by him as a home, he cannot now claim a homestead interest therein. In this case G. D. Walker did not claim a homestead interest in the lands covered by the deed of trust to the John Schumacher State Bank, but was awarded 200 acres out of the Statts tract, adjoining that land, and his brother

was awarded 100 acres out of the Statts tract, and the balance of his complement was given him from the adjoining lands covered by the deed of trust to the John Schumacher State Bank. This was error. Without dispute, it appears that the Statts tract of 300 acres was impressed with the homestead character and was jointly used by both the Walkers. Each had a home thereon, and in protecting them in their claim, the law awarded to each the house in which he lived and all improvements used by him in connection therewith. With this as a nucleus, it was the duty of the court to partition the land and award to each a homestead, having due regard to the rights of other claimants. In giving G. D. Walker 200 acres on the Statts tract and then giving C. E. Walker the remaining 100 acres and 100 acres from the lands claimed by the John Schumacher State Bank, the court has done indirectly what he was without power to do directly, because on these lands, as between G. D. Walker and the John Schumacher State Bank, his claim could not exceed one-half of the Statts tract. It follows then that the court erred in awarding him 200 acres.

9. C. E. Walker had also joined in the deed of trust to the John Schumacher State Bank. Having voluntarily executed this lien, it was valid and enforceable against him, notwithstanding his homestead claim, provided his homestead could be given him from other lands owned by him on this tract. Having found that the entire tract was impressed with the homestead character, it appears on the showing now before us that the court erred in giving C. E. Walker any of the lands claimed by the John Schumacher State Bank, provided his home could be made from other lands not claimed by it, and not covered by any deed of trust. Railway Co. v. Winter, supra.

10. Also, it appears that G. D. Walker, after executing the two deeds of trust claimed by the two banks, owned other lands not covered by any voluntary lien. It is our conclusion that his full complement of 200 acres should be taken from such other lands; that is, enough in connection with his claim on the Statts tract to give him 200 acres.

[10] 11. The homestead interest fixed upon G. D. Walker's lands by his occupancy and use while he was living with his mother was not lost by reason of his subsequent marriage. We know of no principle of law that would destroy the homestead character of this land acquired by him in supporting his mother, because of his subsequent marriage. Appellant contends that this must follow because of the different nature of the homestead interest of a single man and that of a married man. This contention is not sound.

[11] 12. A. L. Kayser's relation to the First State Bank of Conroe did not dis-

qualify him to take the acknowledgment of the Walkers to its deed of trust. In Kutch v. Holley, 77 Tex. 220, 14 S. W. 32, our Supreme Court said:

"That 'the court erred in holding that W. S. Gordon, while acting in the capacity of attorney for H. B. Kutch, was competent as a notary to take the separate acknowledgment of Mrs. Kutch to the mortgage,' is made the basis of the sixth assignment. This was error, it is claimed, 'because the interest of H, B. Kutch was inimical to that of A. M. Kutch,' and Sample v. Irwin, 45 Tex. 573, is cited as authority in support of this assignment of error.

"The facts developed upon this point were that the notary who took the acknowledgment and certified thereto had been for one or two years the general attorney for H. B. Kutch, and that he was his attorney and adviser at the time the notes were drawn up and the mortgage executed. That when the parties came to his office to acknowledge the mortgage he suggested some alterations and corrections, which were made, and then took the acknowledgment of both Kutch and his wife. In Sample v. Irwin, 45 Tex. 573, it was held, substantially, that one who identifies himself with a transaction evidenced by a written instrument by placing his name on the face thereof as agent of one of the parties thereto is not competent as a notary public to take the acknowledgment of any of the parties. If the fact of agency raises a presumption of pecuniary interest in the instrument it would, under the authority of the cases cited in Sample v. Irwin, disqualify the agent from acting as notary. But whether such be the presumption or not, it is certainly so when he identifies himself with the transaction by inserting his name on the face of the instrument as the agent of one of the parties. Such, however, are not the facts in the case under discussion. There are no facts which authorized the court to hold the officer incompetent to take the acknowledgment for the reason assigned, because there is nothing in the evidence indicating that he had any interest in or under the mortgage; nor does it appear that he identified himself with the transaction by the insertion of his name on the face of the same as the agent or attorney for either party."

See, also, Roane v. Murphy (Tex. Civ. App.) 96 S. W. 787; Stoker v. Fugitt (Tex. Civ. App.) 102 S. W. 743; Creosoted Wood Block Paving Co. v. McKay (Tex. Civ. App.) 241 S. W. 549.

It is our conclusion, on the whole record, that the trial court disposed of all issues before him correctly, except in the award to the Walkers of their respective homesteads. On this issue, we reverse and remand this cause, with instructions to the trial court to partition the Statts tract equally between G. D. Walker and C. E. Walker, and to allow each of them an additional 50 acres from the lands not covered by the deeds of trust held by the two banks, provided sufficient land can be found free of such liens. If this cannot be done, then whatever acreage actually exists free of liens should be partitioned equally between the two Walkers, and the balance of the claim of C. E. Walker made up from the lands adjoining the Statts tract covered by the deed of trust of the John Schumacher State Bank.

In all other respects, the judgment of the trial court is affirmed.

In part affirmed, and in part reversed and remanded, with instructions.

### On Rehearing.

The motion for rehearing filed by Gordon-Sewall & Co., appellant, is in all things overruled. Also, we decline to find, as requested by this appellant, "that after the marriage of G. D. Walker he ceased for a few months to live in the same house with his mother, and lived with his wife in a house different from that occupied by his mother," but on the testimony of Mr. Walker himself we find, quoting his testimony:

"I have been living with my mother since the death of my father, and I have been her main support all the time, and, in fact, her main support. * * * My mother has deeded to me and my brother and my sister her interest in those lands surrounding that locality. In other words, she has deeded to us and conveyed to us her entire land holdings. Since making that deed she has continued to live in the house she was then living in, and she lives in the same house to this day. I occupied that house with her a part of the time. As to whether a part of that time I moved my wife away from that house and lived in another and different house —well, I was away for awhile temporarily. You asked me to tell you when I carried my family away from the house my mother occupied. I never entirely moved my stuff away from the house. I merely went away temporarily to the other house."

The "other house" referred to was on the same tract and near the house occupied by the mother.

Appellees G. D. and C. E. Walker, in their motion for rehearing, expressly approve our finding that "the use, enjoyment, and occupation of the entire tract of land by the Walkers impressed each and every acre thereof with the character of a homestead, that is, such use, enjoyment, and occupation of the land gave the Walkers the right to carve from this land, considered as a whole and considered as one tract, their constitutional homesteads of 200 acres each," but they except to our conclusion that in carving their homesteads due regard must be had to the equities and rights of those claiming adverse liens. We have carefully considered appellees' argument against this conclusion, but find no reason to change our position in this conclusion of law. If appellees had impressed the entire tract of land with the character of homestead—a conclusion of fact approved by them—then having set apart a designated tract out of

this larger tract, and for a valuable consideration fixed a lien thereon, they should not now be permitted to impair that contract, provided they can be fully protected in their homestead claims from other portions of the land. However, they suggest that our order of partition would be inequitable as between them. In view of that suggestion, we withdraw our instructions to the trial court as to the manner of partitioning the Statts tract and the extra 100 acres as between G. D. and C. E. Walker, and leave that question open for adjustment as between them. However, we do not modify to any extent our order directing the trial court in the selection of the 100 acres additional to the Statts tract.

In all other respects, the motion for rehearing of appellees G. D. and C. E. Walker is in all things overruled.