**ADAMS et ux. v. SECURITY FINANCE CORPORATION.**

No. 9473.

Court of Civil Appeals of Texas. San Antonio.

Dec. 12, 1934.

Rehearing Denied Jan. 9, 1935.

C. C. Carsner, of Victoria, for appellants.

Linebaugh & Guittard, of Victoria, and H. S. Paulus, of Yoakum, for appellee.

BICKETT, Chief Justice.

Beulah Reeves Adams and husband, W. T. Adams, plaintiffs below, have appealed from a judgment, rendered by the district court in a trespass to try title suit, in favor of Security Finance Corporation, defendant below. The correctness of the judgment depends upon the validity of a deed of trust, which was executed by plaintiffs and which is attacked by them in this suit upon the ground that the property was a part of their homestead.

Beulah Reeves Adams, the common source of title, owned in fee simple, as her separate property, the tract of land in question, comprising 90 acres, a part of the Juan Reue and Sons league in Victoria county. She and her husband executed and delivered a promissory note for the principal sum of $1,000, dated April 7, 1932, payable on or before one year after date thereof to the order of the Landry Motor Sales Company, bearing interest as therein specified, and reciting the execution of a deed of trust on the 90-acre tract to secure the payment thereof. On the same date they also executed and delivered a deed of trust, conveying to M. M. Brown, trustee, the 90-acre tract, as security for the payment of the note. The payee of the note transferred the note and lien to Security Finance Corporation on July 14, 1933. The trustee, acting under the power contained in the deed of trust, sold the security property to satisfy the indebtedness on September 5, 1933, and also executed and delivered his deed, dated the same day, conveying the property to Security Finance Corporation.

The facts can be stated briefly. At the time of the execution of the deed of trust, W. T. Adams, whose occupation was that of a metal worker and contractor, was living with his wife in rented rooms in the town of Yoakum, where he had temporary work. Both before and afterwards they lived at different places, wherever he could get work. At all times since their marriage in 1929 they owned furniture, household supplies, implements, machinery, and live stock that remained on the "Reeves Ranch." There was a tract of 1,040 acres, which was so separated by a highway and a railroad right of way that approximately nine-tenths of it lay in a body to the south and one-tenth to the north. The 90-acre tract lay alongside the northern portion, and with it constituted one inclosure. The highway and railroad were fenced. The entire body of land is bounded on the east by a creek, which is bridged by the highway and railroad, and which thereby constitutes a cattle pass for the passage of cattle to and from the land on the north side of the highway. The 90-acre tract has never had any improvements on it, nor has any of it ever been in cultivation; it has been used for pasture purposes as a part of the "Reeves Ranch." Some cattle, about twelve in number, belonging to Mrs. Adams and other cattle belonging to her sister and her brother were on the ranch, and used the 90-acre portion of the pasture as they did any other part. It was not shown that the cattle of Mrs. Adams constituted any source of maintenance for the home. No firewood, water, or anything else was taken by Adams and wife from the 90-acre tract for the support of the family. The 1,040 acres was owned jointly by Mrs. Z. T. Reeves, J. M. Reeves, Mrs. Gertrude Reeves Thigpen, and Mrs. Adams, the interest of the Mrs. Adams being an undivided five forty-eighths. There were two houses and sets of improvements on the 1,040 acres. J. M. Reeves lived in one of the houses, and Mrs. Z. T. Reeves lived in the other. Mrs. Adams and her husband lived in the house with her mother, Mrs. Reeves, when they were not absent on some construction job of his.

It is correct, as contended by appellants, that an undivided interest in land may be impressed with the homestead character.

But, in such an instance, it is necessary, in order to support the claim of homestead exemption, to show that the property is used for the purposes of a home. The facts, substantially stated above, wholly fail to show any such use of the 90-acre tract as to constitute it a part of the home of Mrs. Adams and her husband. And the district court, trying the case without a jury, correctly resolved the issue against the homestead claim. Himes v. Himes (Tex. Civ. App.) 55 S.W.(2d) 181; Autry v. Reasor, 102 Tex. 123, 108 S. W. 1162, 113 S. W. 748; Franklin v. Smith (Tex. Civ. App.) 171 S. W. 501; 22 Tex. Jur. 259. As said by Chief Justice Gaines in Autry v. Reasor, supra, "Before a homestead can be claimed upon land, it must be used for some

one purpose of a home, either by cultivating it, using it directly for the purpose of raising family supplies, or for cutting firewood and such like."

The case principally relied upon by appellants is Massillon Engine & Thresher Co. v. Barrow (Tex. Com. App.) 231 S. W. 368, 369. Appellants' claim of support in that decision is the holding that two of the parties, Lee Barrow and J. M. Barrow, who were living in separate houses and farming separate parcels of 20 acres and 10 acres, respectively, would be considered as constructively using the range land, and could claim an undivided interest up to 200 acres as exempt for homestead purposes. But the situation of Clarence Barrow, another party, is analogous to that of Mrs. Adams here. Clarence Barrow and wife lived in the old family residence with his mother, and did not make any homestead use of any other part of the property. The court held that Clarence Barrow's interest in the entire property was free from any homestead claim of his and was subject to the mortgage, in the execution of which he had joined with his two brothers. The court said in part:

"It is quite clear from the undisputed evidence that the alleged claim of Clarence Barrow to a homestead right is coextensive with and confined to the identical land used by his mother as her independent homestead. No act of his indicated an intention to devote any of the land, outside of that held and used by the mother, to homestead purposes. No contention is made that she abandoned her homestead, or waived her right thereto; but, on the other hand, it is admitted that she continued to exercise the right of homestead possessions given her under the Constitution until her death. This right was, we think, exclusive, and precluded Clarence Barrow and the other heirs absolutely from asserting a homestead interest in the same land which she claimed as a homestead, while her right of possession continued and was exercised."

Thus it is clear that Beulah Reeves Adams and W. T. Adams have no homestead rights as to the tract of 90 acres.

Appellants contend in their brief, although they did not plead it in the trial court, that the deed of trust was void, because it was not properly acknowledged by Mrs. Adams, in that it was not explained to her. Her testimony shows that she knew that she was executing a deed of trust upon the 90 acres of land owned by her to secure the payment of the note for $1,000 which she had signed.

The notary testified that he explained the instrument to her and that she stated she understood it. At the outset of the trial, it was agreed in open court that W. T. Adams and Beulah Reeves Adams executed and delivered the note and deed of trust. The district court properly decided that issue against appellants in rendering its judgment.

The judgment of the district court is therefore affirmed.